IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **HELENE DUTTON, Individually and on Behalf of All Others Similarly Situated** | | **PLAINTIFF** |
| vs. | No. 4:22-cv-72 | |
| **DENISON HEALTH CARE CENTER, LTD. CO., and CANTEX HEALTHCARE CENTERS, LLC** | | **DEFENDANTS** |

### ORIGINAL COMPLAINT—COLLECTIVE ACTION

Plaintiff Helene Dutton ("Plaintiff"), by and through her attorney Josh Sanford of Sanford Law Firm, PLLC, for her Original Complaint—Collective Action ("Complaint") against Defendants Denison Health Care Center, Ltd. Co., and Cantex Healthcare Centers, LLC (collectively "Defendant" or "Defendants"), states and alleges as follows:

### I.   PRELIMINARY STATEMENTS

1. This is a collective action brought by Plaintiff, individually and on behalf of all others similarly situated, against Defendants for violations of the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (the "FLSA").

2. Plaintiff also brings this claim individually for violations of the Tex. Admin Code § 217, *et seq.,* Tex. Occ. Code Ann. § 301, *et seq*., and Tex. Health and Safety Code § 25:133, referred to collectively as the Texas Safe Harbor for nurses (the "TSH").

3. Plaintiff seeks a declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and a reasonable attorney's fee and costs as a result of Defendants' policy and practice of failing to pay Plaintiff and others similarly situated proper overtime compensation under the FLSA within the statute of limitations period.

4. Plaintiff also seeks a declaratory judgment, compensatory damages, punitive damages, prejudgment interest, and a reasonable attorney's fee and costs as a result of Defendants' act of terminating Plaintiff while she was engaging in protected activity under the TSH.

5. Upon information and belief, within the three years prior to the filing of the Complaint, Defendants have willfully and intentionally committed violations of the FLSA and the TSH as described, *infra*.

## II.   JURISDICTION AND VENUE

6. The United States District Court for the Eastern District of Texas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

7. Plaintiff's claims under the TSH form part of the same case or controversy and arise out of the same facts as her FLSA claims. Accordingly, this Court has supplemental jurisdiction over Plaintiff's TSH claim pursuant to 28 U.S.C. § 1367(a).

8. Plaintiff was employed by Defendants within the Sherman Division of the Eastern District; therefore, venue is proper pursuant to 28 U.S.C. § 1391.

## III.   THE PARTIES

9. Plaintiff is an individual and resident of Sherman County.

10. Separate Defendant Denison Health Care Center, Ltd., Co. ("Denison"), is a domestic partnership.

11. Denison's registered agent for service is Mary Arriaga at 2537 Golden Bear Drive, Carrollton, Texas 75009.

12. Denison maintains a physical business at 3515 South Park Avenue, Denison, Texas 75020.

13. Separate Defendant Cantex Healthcare Centers, LLC ("Cantex"), is a domestic limited liability company.

14. Cantex's registered agent for service is Cantex Tika Capital, LLC, at 1150 Empire Central Place #112, Dallas, Texas 75247.

15. Cantex, in the course of its business, maintains a website at https://www.cantexcc.com/.

16. Defendants do business as Beacon Hill.

## IV.     FACTUAL ALLEGATIONS

17. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

18. Defendants operate a skilled nursing facility in Denison, Texas, named Beacon Hill.

19. Defendants have unified operational control and management, as well as control over employees, including shared power to supervise, hire and fire, establish wages and wage policies and set schedules for their employees through unified management.

20. Upon information and belief, the revenue generated from Denison and Cantex was merged and managed in a unified manner.

21. As a result of this unified operation, control and management, through shared employees and ownership with the authority to establish wages and wage policy, Defendants operated as a single enterprise.

### A.     Facts related to Plaintiff's Claim for Violations of the FLSA

22. At all times relevant herein, Defendants were Plaintiff's employers and are and have been engaged in interstate commerce as that term is defined under the FLSA.

23. Defendants employ two or more individuals who engage in interstate commerce or business transactions, or who produce goods to be transported or sold in interstate commerce, or who handle, sell, or otherwise work with goods or materials that have been moved in or produced for interstate commerce, such as vehicles, fuel, medical supplies and medication.

24. Upon information and belief, Defendants' annual gross volume of sales made or business done is not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) in each of the three years preceding the filing of the Original Complaint.

25. Defendants employed Plaintiff within the three years preceding the filing of this lawsuit.

26. Specifically, Plaintiff was employed by Defendants as a Nurse from August of 2019 through August of 2021.

27. At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA.

28. Defendants also employed other Nurses within the three years preceding the filing of this lawsuit.

29. Plaintiff's primary duty was to provide care to Defendant's patients.

30. Other Nurses had the same or similar job duties as Plaintiff.

31. Plaintiff was paid hourly and was classified as nonexempt from the overtime requirements of the FLSA.

32. Defendants also paid other Nurses and hourly wage and classified them as nonexempt from the overtime requirements of the FLSA.

33. Plaintiff regularly worked over forty hours per week.

34. Upon information and belief, other Nurses also regularly or occasionally worked over forty hours per week.

35. Plaintiff was paid regular bonuses as part of her compensation package.

36. Specifically, Plaintiff was paid covid-related bonuses.

37. These bonuses were based on objective, measurable criteria such as number of shifts worked per week.

38. Other Nurses also received regular, nondiscretionary bonuses.

39. 29 C.F.R. § 778.208 requires that all forms of compensation, such as nondiscretionary bonuses, "must be totaled in with other earnings to determine the regular rate on which overtime pay must be based."

40. Defendants did not include the nondiscretionary bonuses paid to Plaintiff and other Nurses in their regular rate for the purpose of calculating their overtime pay.

41. Defendants automatically deducted 30 minutes for lunch from Plaintiff's time, whether or not she actually took a lunch.

42. Plaintiff was sometimes required to work through her lunch.

43. Upon information and belief, Defendants also deducted 30 minutes for lunch from other Nurses time whether or not they actually took a lunch.

44. Due to Defendants' policy and practice of automatically deducting a lunch hour from Plaintiff's and other Nurses' pay, Plaintiff and other Nurses worked hours which went unrecorded and uncompensated.

45. Defendants knew or showed reckless disregard for whether the way they paid Plaintiff and other Nurses violated the FLSA.

**B.     Factual Allegations Related to Plaintiff's Claim for Violation of the TSH**

46. Plaintiff refused to engage in conduct as directed by her employer while stating that she was taking advantage of the Safe Harbor provisions of the Texas Occupational Code.

47. Specifically, Defendant required Plaintiff to process the admission of five new patients, which Plaintiff refused to do because doing so would not have allowed her to care for her other patients.

48. Had Plaintiff followed Defendant's instructions, her conduct in admitting five new patients while other patients went uncared for would have violated the law and would have jeopardized her nursing license.

49. Plaintiff invoked TSH at the time that she refused to follow Defendant's instructions.

50. Plaintiff was terminated ten minutes after invoking the Safe Harbor protections.

51. Due to her termination, Plaintiff has suffered damages related to loss of income.

## V.     REPRESENTATIVE ACTION ALLEGATIONS

52.     Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully incorporated in this section.

53.     Plaintiff brings this claim for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons similarly situated as drivers who were, are, or will be employed by Defendant within the applicable statute of limitations period, and who are entitled to payment of the following types of damages:

A.     Overtime wages for all hours worked over forty (40) hours in any week;

B.     Liquidated damages; and

C.     Attorney's fees and costs.

54.     Plaintiff proposes the following collective under the FLSA:

**All hourly Nurses who received nondiscretionary bonuses within the last three years.**

55.     In conformity with the requirements of FLSA Section 16(b), Plaintiff has filed or will soon file a written Consent to Join this lawsuit.

56.     The relevant time period dates back three years from the date on which Plaintiff's Original Complaint—Collective Action was filed and continues forward through the date of judgment pursuant to 29 U.S.C. § 255(a), except as set forth below.

57.     The members of the proposed FLSA collective are similarly situated in that they share these traits:

A.     They had the same or substantially similar job duties and responsibilities;

B.     They were eligible for nondiscretionary bonuses as described above;

C.  They were subject to Defendant's common policy and practice to auto-deducting time for lunch; and

D.  They were subject to Defendant's common policy and practice of failing to include the bonuses in their regular rate when calculating their overtime pay.

58. Plaintiff is unable to state the exact number of the collective but believes that the collective exceeds thirty persons.

59. Defendant can readily identify the members of the collective, who are a certain portion of the current and former employees of Defendant.

60. The names and physical and mailing addresses of the probable FLSA collective action plaintiffs are available from Defendant.

61. The email addresses of many of the probable FLSA collective action plaintiffs are available from Defendant.

## VI.  FIRST CLAIM FOR RELIEF
### (Individual Claim for Violation of the FLSA)

62. Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully set forth herein.

63. Plaintiff asserts this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

64. At all relevant times, Defendants were Plaintiff's "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

65. At all relevant times, Defendant has been, and continues to be, an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

66. 29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay a minimum wage for all hours worked up to 40 each week and to pay 1.5 times their

regular wages for all hours worked over 40, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying DOL regulations.

67. During the period relevant to this lawsuit, Defendants failed to pay Plaintiff proper overtime wages.

68. Defendants knew or should have known that their actions violated the FLSA.

69. Defendants' conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary, and in bad faith.

70. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff for monetary damages, liquidated damages and costs, including reasonable attorney's fees, for all violations that occurred within the three years prior to the filing of the Original Complaint.

### VII. SECOND CLAIM FOR RELIEF
**(Collective Action Claim for Violation of the FLSA)**

71. Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully set forth herein.

72. Plaintiff asserts this claim for damages and declaratory relief on behalf of all similarly situated employees pursuant to the FLSA, 29 U.S.C. § 201, *et seq*.

73. At all relevant times, Defendant has been, and continues to be, an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

74. 29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay a minimum wage for all hours worked up to 40 each week and to pay 1.5 times their regular wages for all hours worked over 40, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying DOL regulations.

75. Defendant classified Plaintiff and other similarly situated employees as nonexempt from the overtime provisions of the FLSA.

76. Defendant failed to pay Plaintiff and similarly situated employees for all hours worked, including 1.5 times their regular rate for all hours worked in excess of forty per week.

77. Defendant deprived Plaintiff and similarly situated employees of compensation for all of the hours worked over forty per week in violation of the FLSA.

78. Defendant knew or should have known that its actions violated the FLSA.

79. Defendant's conduct and practices, as described above, were willful.

80. By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiff and all similarly situated employees for monetary damages, liquidated damages and costs, including reasonable attorney's fees provided by the FLSA for all violations which occurred beginning at least three years preceding the filing of Plaintiff's initial complaint, plus periods of equitable tolling.

81. Defendant has not acted in good faith nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and, as a result thereof, Plaintiff and similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

82. Alternatively, should the Court find that Defendant acted in good faith in failing to pay Plaintiff and the collective members as provided by the FLSA, they are entitled to an award of prejudgment interest at the applicable legal rate.

## VIII.   THIRD CLAIM FOR RELIEF
### (Individual Claim for Violation of the TSH)

83.     Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully set forth herein.

84.     Plaintiff asserts this claim under the Tex. Admin Code § 217, *et seq.,* Tex. Occ. Code Ann. § 301, *et seq.,* and Tex. Health and Safety Code § 25:133.

85.     At all relevant times, Defendants were Plaintiff's "employer" within the meaning of the Tex. Occ. Code Ann. and the Tex. Health and Safety Code Ann.

86.     Collectively and separately, the Tex. Admin Code § 217, *et seq.,* Tex. Occ. Code Ann. § 301, *et seq.,* and Tex. Health and Safety Code § 25:133, create a whistleblower protection for nurses.

87.     Sections 301.352 and 301.413 of the Tex. Occ. Code create a retaliation cause of action for nurses that refuse to perform duties that constitute grounds for reporting the nurse to the Texas Board of Nursing.

88.     Plaintiff engaged in protected activity by refusing to engage in conduct which would have constituted grounds for reporting the nurse to the board. Plaintiff invoked Safe Harbor at the time she refused to engage in such conduct.

89.     Within ten minutes of this statement and refusal to act, Defendants terminated Plaintiff.

90.     Defendants knew or should have known that its practices violated the TSH.

91.     Defendants' conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary, and in bad faith.

92.     By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff for compensatory damages, punitive damages, and costs, including reasonable

attorney's fees, for all violations that occurred within the TSH, specifically Tex. Health and Safety Code Ann. § 161.134, Tex. Admin. Code §133.43, and Tex. Occ. Code Ann. §§ 301.352 and 301.413.

## IX. PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Helene Dutton, individually and on behalf of all others similarly situated, respectfully prays that each Defendant be summoned to appear and to answer this Complaint and for declaratory relief and damages as follows:

A. Declaratory judgment that Defendants' practices alleged in this Complaint violate the FLSA, the TSH, and their related regulations;

B. Judgment for damages suffered by Plaintiff and all others similarly situated for all unpaid overtime wages under the FLSA and its related regulations;

C. Judgment for liquidated damages owed to Plaintiff and all others similarly situated pursuant to the FLSA and its related regulations;

D. Judgment, compensatory damages, punitive damages, and other damages owed to Plaintiff pursuant to the TSH and its related regulations;

E. An order directing Defendants to pay Plaintiff interest, a reasonable attorney's fee, and all costs connected with this action; and

F. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**HELENE DUTTON, Individually and on Behalf of All Others Similarly Situated, PLAINTIFF**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (800) 615-4946
Facsimile: (888) 787-2040

*/s/ Josh Sanford*
Josh Sanford
Tex. Bar No. 24077858
josh@sanfordlawfirm.com

**Page 13 of 13
Helene Dutton v. Denison Health Care Centers, Ltd., Co., et al.
U.S.D.C. (E.D. Tex.) No. 4:22-cv-72
Original Complaint**